**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:01-cr-00137** |
| | ) | **Judge Aleta A. Trauger** |
| | ) | |
| **LAVELLE S. MOORE** | ) | |

## MEMORANDUM and ORDER

    Defendant Lavelle Moore has served 19 years of an 85-year sentence, following conviction by a jury on charges of, among others, money laundering, a conspiracy to distribute marijuana, and four separate counts of carrying a firearm while trafficking marijuana, in violation of 18 U.S.C. § 924(c). Together, the firearm charges required, at the time of sentencing, a mandatory minimum sentence of 75 years. Now before the court is Moore's Motion for Sentence Reduction Under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018). (Doc. No. 87.) The government opposes the motion.

    For the reasons set forth herein, the motion will be denied.

## I.    BACKGROUND

    Moore began dealing large quantities of marijuana in 1996, and he kept at it for five years, until his arrest on August 29, 2001. (Presentence Report ("PSR") at 6–8.) During that five years, he was arrested once. In 1997, the police intercepted 22 pounds of marijuana in the mail, headed toward Nashville. Moore was held responsible for the shipment, and he was in possession of a .25 caliber handgun when he was arrested. (*Id.* at 15–16.) He pleaded guilty to the charges related to that event in state court and received a sentence of three years in custody, to be served at 30% but

"with all but 30 days suspended and placed on probation for three years." (*Id.* at 15.) He apparently spent one month in jail and remained on probation until August 17, 2001. (*Id.*)

He was arrested a second time on August 29, 2001, when police came to his house on a domestic-violence call. (*Id.* at 16.) Ensuing searches of his home and vehicles yielded cash, firearms, and drug ledgers. He was held in state custody for five days and sentenced to time served on domestic violence and vandalism misdemeanors. At the time of this arrest, he was already under federal investigation for money laundering in connection with marijuana trafficking. Two days after he was released from custody on the domestic violence misdemeanor, on September 6, 2001, he was arrested on a single-count federal indictment for possessing a firearm as a convicted felon.

Initially represented by a CJA panel attorney, Moore appeared to be willing to cooperate and to talk with the government. However, by the end of September 2001, Moore had retained new counsel who had no experience practicing in this court and very little criminal practice experience. The new attorney immediately informed the government that Moore did not wish to cooperate further and insisted that he would be acquitted on all charges.[1] On October 10, 2001, a sixteen-count superseding indictment was issued, including charges of engaging in a conspiracy to distribute marijuana from 1996 through 2001, money laundering, firearm possession, and, most significantly, the four charges of carrying a firearm while trafficking in marijuana, in violation of 18 U.S.C. § 924(c). (Doc. No. 25.)

---

[1] In 2005, the defendant filed a motion under 28 U.S.C. § 2255 alleging, among other claims, ineffective assistance of trial counsel, but the basis for this claim was only that his attorney "had never tried a federal case before and did not meet the standard of assistance that would be considered effective and therefore violated [his] rights under the Sixth Amendment." *Moore v. United States*, No. 3:05-cv-00805 (M.D. Tenn. Oct. 6, 2005) (Motion, Doc. No. 1). He did not otherwise specify anything his attorney did or failed to do that constituted ineffective assistance. His motion was unsuccessful. *Id.* (M.D. Tenn. Nov. 7, 2005) (Memorandum and Order, Doc. No. 2).

At that time, under the interpretation of § 924(c) established by the Supreme Court in *Deal v. United States*, 508 U.S. 129 (1993), sentences for multiple convictions in the same case under § 924(c) would be "stacked," meaning that they had to be consecutive to each other and that, except for the first conviction, each of them would count as a "second or subsequent conviction." Thus, the first conviction would require a mandatory five-year minimum sentence, and the subsequent convictions would each require a mandatory consecutive sentence of 20 or 25 years (depending on whether they were committed after the penalty for a second offense was raised from 20 to 25 years).[2] As set forth in the PSR, Moore's four § 924(c) counts carried mandatory minimum sentences of 5, 20, 25, and 25 years, respectively, for a total of 75 years. In addition, a conviction for conspiracy to distribute 100 kilograms or more of marijuana carried a mandatory minimum sentence of 5 years, which would be doubled if the government chose to file a notice under 21 U.S.C. § 851 regarding Moore's previous state felony drug conviction. (*See* PSR at 5, 22.) In other words, it should have been clear to his attorney that conviction on these charges could carry a mandatory minimum sentence of 85 years.

Although the government repeatedly advised defense counsel that it was willing to enter into a cooperation agreement and to an agreed sentence of approximately ten years, Moore and his attorney repeatedly rejected that offer. (Doc. No. 87-1, at 11–12.) After litigating a motion to suppress, which was denied (Doc. No. 35), the government filed the notice of prior conviction under 21 U.S.C. § 851 on November 2, 2001 (Doc. No. 36), and the case proceeded to trial, beginning November 5, 2001, just 23 days after issuance of the superseding indictment. Moore was found guilty on all 16 counts after a five-day trial and one day of jury deliberations. (Doc.

---

[2] Moore's drug trafficking ran from 1996 to 2001. In the middle of that span, in November 1998, Congress amended § 924(c) to increase the penalty for second or subsequent convictions from twenty years to twenty-five years. PL 105-386, 112 Stat 3469 (Nov. 13, 1998).

Nos. 44, 47.) He was sentenced on February 14, 2002 to the mandatory minimum of 85 years. (Doc. No. 57; *see also* Sent'g Tr., Doc. No. 56.) His conviction was upheld on appeal. *United States v. Moore*, 93 F. App'x 887 (6th Cir. 2004). His projected release date is March 23, 2075. *See* BOP Inmate Locator, available at https://www.bop.gov/inmateloc/ (last visited Aug. 18, 2020).

Moore has now served almost nineteen years of his sentence and is incarcerated at FCI Memphis. His attorney calculates that, with 15% good-time credits, this equates to approximately 22 years. According to information submitted with his present motion, Moore "has consistently received average and above average work evaluations," and he has "gained employable work skills through his employment in" a UNICOR factory. (Doc. No. 87-2, Progress Report at 1.) Although he has had five disciplinary infractions (three for refusing an assignment, one for being untidy, and one for having marijuana), his disciplinary record has been clean since 2014. (*Id.* at 2.) He has completed drug education, a "Challenge" course, and many other classes. (*Id.* at 1–2.)

Moore submitted a *pro se* Application for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A) to the Warden of FCI Memphis on January 23, 2020, arguing that, if he were sentenced today, he would receive a prison term of around 25 years rather than 85. (Doc. No. 87-3.) He also explains that he was offered a plea deal with a 10-year sentence prior to trial, but his attorney assured him that the government had "nothing" on him and that 10 years was the most he could get anyway. (*Id.* at 11, 3.) He requests immediate release or, alternatively, a sentence reduction so that he could be transferred to a facility at a lower security level with more programming and eventually be returned to society and his family. (*Id.* at 11–12.) As of March 2020, the Warden had not responded to his request.

The present Motion for Sentence Reduction Under 18 U.S.C. § 3582(c)(1)(A) was filed through counsel on May 15, 2020. (Doc. No. 87.) In it, the defendant first argues that the court has

the power to determine what qualify as "extraordinary and compelling reasons" for a sentence reduction under § 3582(c)(1)(A), pointing to this court's decision in *United States v. Young*, No. 2:00-cr-00002-1, --- F. Supp. 3d ---, 2020 WL 1047815 (M.D. Tenn. Mar. 4, 2020). Second, he argues that extraordinary and compelling reasons warrant a reduction of his sentence—namely Congress's renunciation of a reading of § 924(c) that resulted in his grossly excessive sentence, the excessive penalty he incurred for exercising his right to go to trial (at the urging of inexperienced counsel), and the fact that his lack of criminal history made no difference under *Deal*'s stacking scheme. (Doc. No. 87, at 17.) He requests that, upon application of the § 3553(a) factors, he be resentenced to time served or, alternatively, 25 years.

The government opposes the motion (Doc. No. 89), arguing both that the defendant is not entitled to relief under § 3582(c)(1)(A) and that the § 3553(a) factors, even if applicable, do not weigh in favor of release. Moore has filed a Reply (Doc. No. 90), largely reiterating the arguments raised in his motion.

## II.    SECTION 3582(c)(1)(A)

"By statute, a federal court 'may not modify a term of imprisonment once it has been imposed.'" *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020) (quoting 18 U.S.C. § 3582(c)). "But that rule comes with a few exceptions, one of which permits compassionate release." *Id.* "Before the First Step Act of 2018, such relief was available only on motion of the Director of the Bureau of Prisons, but the new statute allows a prisoner to seek relief on his own initiative." *United States v. Loggins*, No. 19-2689, --- F.3d ---, 2020 WL 4375103, at *1 (8th Cir. July 31, 2020).

Section 3582, as amended by the First Step Act, states in relevant part:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment

> . . . , after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A). In other words, the court may now grant a motion to reduce a sentence under § 3582(c)(1) after considering the relevant factors in § 3553(a), if (1) the defendant has exhausted administrative remedies;[3] (2) the court finds that extraordinary and compelling reasons warrant a reduction; and (3) any reduction is consistent with applicable Sentencing Commission policy statements.

Congress has never defined "extraordinary and compelling reasons" except to state that "[r]ehabilitation of the defendant alone" is not enough. 28 U.S.C. § 994(t). Instead, Congress delegated to the United States Sentencing Commission the duty to "promulgat[e] general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) . . . describ[ing] what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." *Id.*

The Commission largely complied with this directive, but its actions were prior to the passage of the First Step Act. *See* U.S.S.G. § 1B1.13 (Policy Statement) (Nov. 1, 2018). Section 1B1.13 states that, "[u]pon motion of the Director of the Bureau of Prisons," a court may reduce a prison term after consideration of the relevant factors in § 3553(a), if the court finds that (1) extraordinary and compelling circumstances warrant a reduction *or* the defendant is over age 70 and has served at least 30 years in prison; (2) the defendant is not a danger to society; and (3) the reduction is "consistent with this policy statement." The actual Policy Statement does not define extraordinary and compelling circumstances. Instead, that question is addressed in the Application

---

[3] It is undisputed here that the defendant exhausted administrative remedies.

Notes, which list specific examples of "extraordinary and compelling reasons." *See id.* cmt. n.1. These examples include (1) the medical condition of the defendant, (2) the age of the defendant, and (3) his family circumstances. *See id. cmt.* n.1(A)–(C). The Application Notes also provide a fourth "catchall provision," which states: "As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* cmt. n.1(D).

The Sentencing Commission has never updated its policy statement following the passage of the First Step Act, largely because it has for a number of years lacked the quorum required to enable it to conduct business. *See United States v. Rodd*, 966 F.3d 740, 746 & n.7 (8th Cir. 2020) (observing that the § 1B1.13 Policy Statement had not "been amended since the passage of the First Step Act" and noting that such an amendment was unlikely in the near future, given the lack of a quorum on the Sentencing Commission). Further, as several courts have noted, the policy statement "clearly conflicts" with the amended version of § 3582, insofar as it limits the application of the policy statement to motions filed by the Director of the BOP. *See, e.g.*, *United States v. Clausen*, No. CR 00-291-2, 2020 WL 4260795, at *4 (E.D. Pa. July 24, 2020) (citing *United States v. Ebbers*, 432 F. Supp. 3d 421, 427 (S.D.N.Y. 2020) (explaining that the "statement is at least partly anachronistic")).

"Because 'the Sentencing Commission never harmonized its policy statements with the [First Step Act],' district courts face a 'conundrum': Does the applicable policy statement for the old regime still apply to the new one?" *Id.* (quoting *United States v. Rodriguez*, 424 F. Supp. 3d 674, 681 (N.D. Cal. 2019) (some internal quotation marks omitted). A majority of the district courts faced with this conundrum, including three of the four judges in this district, have concluded that the policy statement "is not ultimately conclusive given the statutory change" and that "the

dependence on the BOP to determine the existence of an extraordinary and compelling reason, like the requirement for a motion by the BOP Director, is a relic of the prior procedure that is inconsistent with the amendments implemented by the First Step Act." *Young*, 2020 WL 1047815, at *3, 6; *see also United States v. Duncan*, No. 3:11-CR-00012, --- F. Supp. 3d ---, 2020 WL 4669944, at *5 (M.D. Tenn. Aug. 12, 2020) (Crenshaw, C.J.) (finding that the defendant's documented chronic health conditions and the likelihood he would become extremely sick or die if he were infected with COVID-19 constituted an "extraordinary and compelling" reason for relief under § 3582); *United States v. Myles,* No. 3:11-CR-00253, 2020 WL 4350604, at *2 (M.D. Tenn. July 29, 2020) (Campbell, J.) (same); *but see United States v. Kimbrell*, No. 3:19-CR-00064, 2020 WL 3972746, at *3 (M.D. Tenn. July 14, 2020) (Richardson, J.) ("[W]here (as here) the Director of BOP has not determined that any such 'other' reasons exist in the defendant's case, compassionate release for that defendant cannot be predicated on 'other' extraordinary and compelling reasons under the catchall provision.").[4]

Chief Judge Crenshaw, in reaching the conclusion that the defendant in the case before him had established the existence of extraordinary and compelling reasons for relief, noted that, "[i]n addition to there being no changes to the application notes, other factors tip the scale in favor of the conclusion that a court can look at 'other reasons' when considering 'extraordinary and compelling reasons' under the First Step Act." *Duncan*, 2020 WL 4669944, at *4. These other factors, as enumerated in *Duncan*, include:

---

[4] Notably, in *Kimbrell*, Judge Richardson observed that "[t]he question remains a debatable one." 2020 WL 3972746, at *3. And the defendant in that case sought relief on the basis of the ongoing COVID-19 pandemic and his need for cataract surgery in one eye, but did not contend that his cataract placed him at higher risk for contracting COVID-19. The court found under these circumstances that the defendant was "far from meeting his burden to demonstrate extraordinary and compelling circumstances." *Id.* at *4.

- The compassionate release provision of the First Step Act began as a stand-alone bill titled "Granting Release and Compassion Effectively Act of 2018," S. 2471, 115th Cong. (2018) 2471, which "explicitly sought to 'improve the compassionate release process of the Bureau of Prisons.'" The need for such an act was apparent because, traditionally, the Bureau of Prison was parsimonious in granting compassionate release petitions. Indeed, through 2013, only 24 persons (on average) were released per year, and that number only increased to 83 inmates in 2014 after complaints were made by to the Bureau of Prisons by the Inspector General's office. "Since Congress still amended the program following this increase, one can infer Congress thought eighty-three was still insufficient." Assuming "the BOP Director faithfully executes the narrowly drawn policy and program statements related to compassionate release, . . . the only way direct motions to district courts would increase the use of compassionate release is to allow district judges to consider the vast variety of circumstances that may constitute 'extraordinary and compelling.'" *United States v. Brown*, 411 F. Supp. 3d 446, 451 (S.D. Iowa 2019).

- The policy statements in § 1B1.3 "not only pre-date the FSA amendment of § 3582(c) but also continue to reference expressly BOP's pre-FSA role as exclusive gatekeeper, which of course the FSA eliminated." *United States v. Haynes*, No. 93 CR 1043 (RJD), --- F. Supp. 3d ---, 2020 WL 1941478, at *11 (E.D.N.Y. Apr. 22, 2020).

- "Before the First Step Act's amendments to § 3582, it made sense that the BOP would have to determine any extraordinary and compelling reasons—only the BOP could bring a motion for a reduction of sentence under § 3582(c)(1)(A). But defendants no longer need the blessing of the BOP to bring such motions. The BOP in fact may never weigh in or provide guidance when a § 3582(c) motion is brought by a defendant. Given the changes to the statute, the policy-statement provision that was previously applicable to 18 U.S.C. § 3582(c)(1)(A) no longer fits with the statute and thus does not comply with the congressional mandate that the policy statement must provide guidance on the appropriate use of sentence-modification provisions under § 3582." *United States v. Cantu*, 423 F. Supp. 3d 345, 351 (S.D. Tex. 2019) (internal citation omitted).

- "The Department of Justice issued internal guidance on May 18, 2020 directing the United States to concede extraordinary and compelling reasons exist when defendants present certain health conditions, including those in the Centers for Disease Control and Prevention's high-risk groups," even though "many conditions the United States conceded constitute extraordinary and compelling reasons are not health conditions 'from which [the incarcerated person] is not expected to recover,' as required in Note 1(A). Instead, these concessions fall more naturally into the catchall provision." *United States v. Adeyemi*, No. CR 06-124, 2020 WL 3642478, at *10 (E.D. Pa. July 6, 2020) (citation omitted).

- "'[Guideline] commentary has no independent legal force,'" and "'commentary that contradicts or is inconsistent with a federal statute is not authoritative,'"

including "commentary to policy statements issued by the Sentencing Commission." The policy statement gives considerable discretion to the director of the BOP, but that discretion "is no longer appropriate, given Congress's decision to remove the Director's control over compassionate release motions." *United States v. Avery*, No. 2:07-CR-20040-2, 2020 WL 3167579, at *5–6 (W.D. Tenn. June 9, 2020) (quoting *United States v. Havis*, 927 F.3d 382, 386 (6th Cir. 2019); *United States v. Murphy*, No. 19-3290, --- F. App'x ----, 2020 WL 2910098, at *4 (6th Cir. June 3, 2020)).

*Duncan*, 2020 WL 4669944, at *4–5.

This court, further bolstered by *Duncan* and other decisions issued in the intervening five months, reaffirms the conclusion it reached in *Young* that "the district courts themselves have the power to determine what constitute extraordinary and compelling reasons for compassionate release." *Young*, 2020 WL 1047815, at *6.[5]

## III. APPLICATION TO THIS CASE

The defendant here argues, relying principally on this court's decision in *Young*, that he is entitled to a sentence reduction due to the First Step Act's amendment of § 924(c). As indicated above, at the time of the defendant's relevant conduct, multiple convictions on § 924(c) charges in a single case, even assuming no prior criminal history, triggered a mandatory minimum five-year sentence for the first § 924(c) offense, followed by mandatory minimum 20- or 25-year sentences for each additional § 924(c) conviction, depending on whether the conviction related to conduct

---

[5] Unlike the Sentencing Commission, the BOP has issued revised guidelines pertaining to compassionate release following enactment of the First Step Act. In January 2019, it released Program Statement 5050.50, "Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g)." Available at: https://www.bop.gov/policy/progstat/5050_050_EN.pdf. This Program Statement identifies several nonexclusive factors for determining whether extraordinary and compelling reasons exist, including the defendant's criminal and personal history, the nature of the offense, disciplinary infractions, length of sentence, time served, current age, age at the time of the offense, release plans, and "[w]hether release would minimize the severity of the offense." *Id.* ¶ 7. Because a defendant may now move independently for compassionate release, the BOP's determination is no longer the last word on the topic.

that took place before or after November 1998. (*See* Note 1, *supra*.) Even at the time of Moore's sentencing, however, it was widely recognized that the "stacking" of the sentences under § 924(c) often resulted in prison terms that were "not necessarily commensurate with the underlying offense." *United States v. Defendant(s)*, No. 2:99-CR-00257-CAS-3, 2020 WL 1864906, at *3 (C.D. Cal. Apr. 13, 2020) (citing U.S. Sentencing Comm., *Report to the Congress: Mandatory Minimum Penalties in the Federal Criminal Justice System* (2011) (explaining that the application of § 924(c) could "lead to sentences that are excessively severe and disproportionate to the offense committed")).

Congress amended these harsh sentencing requirements with the passage of the First Step Act in December 2018. *See* First Step Act of 2018, Pub. L. No. 115-391, § 403, 132 Stat. 5194, 5221–22 (Dec. 21, 2018). Specifically, section 403 of the First Step Act amended portions of § 924(c) so that the heightened mandatory minimum terms for subsequent convictions are only applicable after a "prior conviction under this subsection has become final." 18 U.S.C. § 924(c)(1)(C). In other words, the First Step Act reduced the mandatory minimum sentence for first-time offenders who commit multiple § 924(c) offenses charged in the same indictment. Thus, although Congress did not give this amendment retroactive effect,[6] if Moore were sentenced today, he would face a mandatory minimum sentence of five years for each of the four § 924(c) convictions, or a mandatory minimum of 20 years rather than 75. *Id.* § 924(c)(1)(A)(i).

---

[6] *See* First Step Act § 403(b) ("This section, and the amendments made by this section, shall apply to any offense that was committed before the date of enactment of this Act, if a sentence for that offense has not been imposed as of such date of enactment."); *see also United States v. Richardson*, 948 F.3d 733 (6th Cir. 2020) ("[T]he text makes clear that the only defendants who can benefit from section 403 are those whose conduct predates December 21, 2018, but whose sentences had not yet been imposed (along with defendants whose conduct occurred after the First Step Act became law).").

Also as part of the First Step Act, Congress changed the recidivist penalty structure for drug-trafficking offenses, such that the mandatory minimum sentence on the drug-trafficking charge would now be five years rather than ten, because Moore would no longer qualify for the § 851 enhancement based on a drug conviction for which, although he was sentenced to three years, he served only one month in jail. *See* 21 U.S.C. § 841(b)(1)(B) (setting forth enhancement scheme); 21 U.S.C. § 802(57)(A) (requiring that, in order for a drug felony to count as a predicate for an enhancement under § 841(b), "the offender *served* a term of imprisonment of more than 12 months" (emphasis added)).

In *Young*, the defendant argued that the First Step Act's reversal of *Deal* and the fact that, under the First Step Act, he would have been subject to a mandatory minimum sentence of 25 years rather than 92, together with his medical condition, his advanced age, his having served more than 20 years of his sentence, and his demonstrated full rehabilitation, together established the existence of extraordinary and compelling reasons. The court agreed. *See Young*, 2020 WL 1047815, at *8. Other courts have concluded that, while rehabilitation alone does not justify a reduction in sentence, that factor, when combined with others, may warrant relief under § 924(c). *See, e.g.*, *Clausen*, 2020 WL 4260795, at *7 ("Although Clausen's rehabilitation alone does not qualify him for a reduced sentence as a matter of law, *see* 28 U.S.C. § 994(t), nothing prevents the Court from concluding that a combination of factors, including rehabilitation, can together establish extraordinary and compelling reasons."); *see id.* (concluding that demonstrated rehabilitation plus the defendant's stacked sentence under the previous version of § 924(c) constituted extraordinary and compelling reasons for a sentence reduction) (collecting cases reaching the same conclusion).

In *Clausen*, however, the defendant was facing a 213-year sentence, 205 of which were stacked mandatory minimum terms for § 924(c) convictions alone. In addition, despite his extraordinarily lengthy sentence, the defendant had a "remarkable record of rehabilitation" while incarcerated, including

> completing hundreds of BOP educational programs, designing and teaching his own courses, serving as a mentor to his peers and improving himself. He has maintained a clean disciplinary record since 2003 and his reentry progress report notes that "Clausen has excelled in all areas of programming and the reentry initiative. He has great rapport with staff and is very instrumental in the reentry effort." And the seventeen letters of recommendation from BOP employees, university professors and family members submitted on his behalf shed light on the transformation that Clausen has made while incarcerated.

*Id.* at *8 (internal citations to the record omitted).

In the present case, Moore cites to the effect of *Deal* on his sentence and the fact that he would have received a much lighter sentence if he had accepted a plea rather than electing to go to trial. In support of the § 3553(a) factors, he further argues that he has "done well in prison," has had a completely clean record since 2014, has completed numerous courses, has gained employable work skills, and poses little risk of recidivism. He does not argue that his age (now nearly 45) or any health conditions make him more vulnerable to serious illness or death from COVID-19.

The fact remains that Congress, for whatever reason, did not make the First Step Act amendment to § 924(c) retroactive. While this court finds that the gross unfairness resulting from that failure *in combination with other compelling circumstances* may justify a sentence reduction under § 3582, the First Step Act amendment to § 924(c), standing alone, does not qualify as an extraordinary and compelling reason for a sentence reduction.[7] And, while the defendant here has

---

[7] In *United States v. Gatewood*, 807 F. App'x 459 (6th Cir. 2020), the Sixth Circuit upheld the prison term of a defendant sentenced approximately one month before the enactment of the

made some effort to present other factors that, in combination, might warrant relief, the court finds that the defendant has not provided compelling enough circumstances to justify a reduction in his sentence. The court is appreciative of Moore's attempts at rehabilitation but cannot, on the record presented, characterize them as exemplary. And his claim of what amounts to the ineffective assistance of counsel in pushing him to reject a very favorable plea deal is a matter that should have been, but, regrettably, was not, raised in his § 2255 motion (*see* Note 1, *supra*) and cannot now provide a basis for relief in the absence of permission from the Sixth Circuit to file a second or successive habeas petition.

In sum, the court finds that the defendant has failed to establish the existence of extraordinary and compelling circumstances to warrant a sentence reduction in this case.

## IV. CONCLUSION AND ORDER

While fully cognizant of the unfairness of the disparity between the defendant's lengthy sentence and the much shorter sentence a defendant with the same criminal history convicted based on exactly the same behavior would face today, this unfairness, standing alone, does not qualify as an extraordinary and compelling reason for a sentence reduction under § 3582, even considered in combination with the other factors to which the defendant points, such as they are.

---

First Step Act. The court held that, because the "stacking" interpretation of § 924(c) applied at the time of sentence, such that his sentence would have been substantially lower if it had been issued after the effective date of the Act, "that disparity does not amount to an Eighth Amendment violation." *Id.* at 463. The court noted that "disparities in sentences 'will exist whenever Congress enacts a new law changing sentences' and that "[w]ithholding the benefits of a change from previously sentenced defendants . . . is the general practice in federal sentencing." *Id.* at 463–64 (citations omitted). Although the court was not faced with the precise question presented here, the language of the holding strongly suggests that what it otherwise views as an "ordinary practice" could not also, standing alone, be an "extraordinary and compelling reason" to deviate from it.

The Motion for Sentence Reduction Under 18 U.S.C. § 3582(c)(1)(A), therefore, is **DENIED**. Having reached that conclusion, the court has no need to address the sentencing factors under § 3553(a).

It is so **ORDERED**.

ALETA A. TRAUGER
United States District Judge